**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SWETALA, individually and on behalf of all others similarly situated and the general public, <br><br> Plaintiff, <br><br>     v. <br><br><br> QUTEN RESEARCH INSTITUTE, LLC, <br><br> Defendant. | CASE NO: 1:24-at-418 <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT** |

Plaintiff Anthony Swetala ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Quten Research Institute, LLC ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    <u>INTRODUCTION</u>

1.      Defendant makes, distributes, sells, and markets a wide variety of dietary supplements under the brand name Qunol. The products at issue include the following, in any size, count, or variation:

- Extra Strength Magnesium 420 mg;
- Magnesium Gummies 200 mg;
- Extra Strength Turmeric Curcumin Complex 1000 mg;
- Turmeric 2250 mg;
- Turmeric + Ginger 2400 mg
- Turmeric Gummies 500 mg;
- Turmeric 500 mg + Ginger 50 mg Gummies;
- Turmeric + Ginger Gummies 550 mg;
- Turmeric + Ginger Chews 750 mg;
- CoQ10 Gummies 100 mg; and
- Ultra Omega-3 Fish Oil 1000 mg

(collectively, the "Products").

2.      Defendant deceptively labels certain of its Qunol products by misrepresenting the dosage amount of each capsule, gummy, or chew. Specifically, the front labels of the Qunol Products prominently advertise a certain dosage amount, for example, "Extra Strength Turmeric 1000 mg." The front labels also advertise the number of capsules, gummies, or chews included in each Product, for example, 120 vegetarian capsules. Reasonable consumers are led to believe that each capsule, gummy, or chew contains the advertised dosage amount, for example, 1,000 mg of turmeric in each vegetarian capsule.

3.      The truth, however, is that each capsule does not contain the advertised dosage

1

amount. Instead, each capsule, gummy, or chew contains only a fraction of the advertised dosage and consumers must ingest two or more capsules to achieve the advertised dosage. As a result, consumers grossly overpay for the Products, receiving only half or a third of the advertised value while paying the full purchase price.

4.      Plaintiff read and relied upon Defendant's advertising when purchasing the Qunol Extra Strength Turmeric Curcumin Complex 1000 mg product and was damaged as a result.

5.      Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the United States, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, §§ 17500 *et seq*. ("FAL"). Plaintiff brings further causes of action for breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation/fraud, and quasi-contract/unjust enrichment.

6.      Plaintiff seeks an order compelling Defendant to (a) cease marketing the Products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

## II.      <u>JURISDICTION AND VENUE</u>

7.      This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

8.      The court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant does business within this judicial district, sells the Products in this judicial district, and is committing the acts complained of below within this judicial district.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the

Products in this District, and is subject to personal jurisdiction in this District.

### III.    **PARTIES**

10.    Defendant Quten Research Institute is a limited liability company with a principal place of business located at 10 Bloomfield Avenue, Bldg B, Pine Brook, NJ 07058. Defendant makes, labels, distributes, sells, and markets Qunol branded products throughout the United States and in California. Defendant is responsible for the making, labelling, distribution, selling, and marketing of the Products throughout the applicable statute of limitations period.

11.    Plaintiff Anthony Swetala ("Plaintiff") is a resident of California and purchased the Qunol Extra Strength Turmeric 1000 mg product at a Walmart store located at 1110 East Prosperity Ave., Tulare, CA in or around January 2023. Plaintiff saw the misrepresentations made on the Product label prior to and at the time of purchase and understood them as representations and warranties that each unit of the product contained the advertised dosage amount. Plaintiff relied on the representations made on the Product's label in deciding to purchase the Product. These representations and warranties were part of his basis of the bargain, in that he would not have purchased the Product, or would only have been willing to purchase the Product at a lower price, had he known the representations were false. Plaintiff would consider purchasing the Product again if the advertising statements made on the Product labels were, in fact, truthful and represented in a manner as not to deceive consumers.

### IV.    **NATURE OF THE ACTION**

12.    Defendant sells the following Qunol branded products (the "Products") with misleading dosage representations on the Product packing and labels:

- **Extra Strength Magnesium 420 mg** – Two (2) capsules are required to achieve the advertised dosage of 420 mg.

- **Magnesium Gummies 200 mg** – Two (2) gummies are required to achieve the advertised dosage of 200 mg.

- **Extra Strength Turmeric Curcumin Complex 1000 mg –** Two (2) capsules are required to achieve the advertised dosage of 1,000 mg.

- **Turmeric 2250 mg** – Three (3) capsules are required to achieve the advertised

dosage of 2,250 mg.

- **Turmeric + Ginger 2400 mg –** Three (3) capsules are required to achieve the advertised dosage of 2,400 mg.
- **Turmeric Gummies 500 mg –** Two (2) gummies are required to achieve the advertised dosage of 500 mg.
- **Turmeric 500 mg + Ginger 50 mg Gummies –** Two (2) gummies are required to achieve the advertised dosage of 500 mg turmeric and 50 mg ginger.
- **Turmeric + Ginger Gummies 550 mg** – Two (2) gummies are required to achieve the advertised dosage of 550 mg.
- **Turmeric + Ginger Chews 750 mg** – Two (2) gummies are required to achieve the advertised dosage of 750 mg.
- **CoQ10 Gummies 100 mg** – Two (2) gummies are required to achieve the advertised dosage of 100 mg.
- **Ultra Omega-3 Fish Oil 1000 mg** – Two (2) gummies are required to achieve the advertised dosage of 1,000 mg.

13.    True and correct copies of the Qunol Products from Defendant's website, www.qunol.com, are shown below:

//
//
//
//
//
//
//
//
//
//
//

4

**Extra Strength Magnesium 420 mg**





**Magnesium Gummies 200 mg**





5

**Extra Strength Turmeric Curcumin Complex 1000 mg**





**Turmeric 2250 mg**



6

**Turmeric + Ginger 2400 mg**



**Turmeric Gummies 500 mg**



**Turmeric 500 mg + Ginger 50 mg Gummies**

 

**Turmeric + Ginger Gummies 550 mg**



8

**Turmeric + Ginger Chews 750 mg**



| Supplement Facts | | |
|---|---|---|
| Serving Size 2 Chews | | |
| Servings Per Container 30 | | |
| | Amount Per Serving | % Daily Value |
| Calories | 45 | |
| Total Fat | 1 g | 1%* |
| Saturated Fat | 0.5 g | 3%* |
| Total Carbohydrate | 9 g | 3%* |
| Total Sugars | 5 g | ** |
| Includes 5g Added Sugars | | 9%* |
| Sodium | 20 mg | 1% |
| Qunol® Proprietary Blend: Bioenhanced Turmeric Complex (from curcuma longa) Extract (rhizome) (18-22% curcuminoids), Ginger (Zingiber officinale) Extract (rhizomes) | 750mg | ** |

*Percent Daily Values are based on a 2,000 calorie diet.
**Daily Value not established.

**CoQ10 Gummies 100 mg**



| Supplement Facts | | |
|---|---|---|
| Serving Size 2 Gummies | | |
| Servings per Container 30 | | |
| | Amount Per Serving | % Daily Value |
| Calories | 20 | |
| Total Carbohydrate | 5 g | 2%* |
| Total Sugars | 4 g | ** |
| Includes 4g added sugars | | 8%* |
| Coenzyme Q10 Ubiquinone | 100 mg | ** |

*Percent of Daily Values are based on a 2,000 calorie diet.
**Daily Value not established.

**OTHER INGREDIENTS:** Tapioca syrup, cane sugar, gamma-cyclodextrin, pectin, natural flavors, citric acid, sodium citrate

Gluten Free    No Artificial Colors    Vegan

9

1

**Ultra Omega-3 Fish Oil 1000 mg**

2

3

4

5

6



7

8

9

10

11

12

13

14

15

16      14.      Defendant's dosing representations are prominently and conspicuously displayed

17  in large, bolded font to grab the consumer's attention.

18      15.      Contrary to the prominently advertised dosage amount on each of the Products'

19  labels, each capsule, gummy, or chew contains only a fraction of the advertised dosage amount.

20  For example, consumer must ingest three (3) capsules of the Qunol Turmeric 2250 mg Product to

21  achieve the advertised dosage of 2,250 mg. This leads consumers to overpay for the Products by a

22  significant margin.

23      16.      Defendant's advertising misleads reasonable consumers into believing that each

24  capsule, chew, or gummy unit contains the advertised dosage of nutrients. However, contrary to

25  the labeling, each unit only contains a fraction of the advertised nutrients. Consequently,

26  reasonable consumers believe that they are receiving two or more times the amount of nutrients

27  per Product than what they are actually receiving. As a result, Defendant has charged consumers

28  a premium for the Products, while cutting costs and reaping the financial benefits of selling dietary

supplements with less than the advertised dosage of nutrients in each Product.

17.    The label misrepresentations are material to reasonable consumers, including Plaintiff. The dosage representations (number of milligrams) and unit representations (number of capsules, gummies, or chews) convey the type and amount of nutrients provided by the Products, and the primary purpose of the Products is to provide the amount of nutrients advertised by the Product labels. Accordingly, reasonable consumers are likely to be deceived by the Products' labels.

## DEMAND FOR DIETARY SUPPLEMENTS AND THE COMPETITIVE MARKET

18.    Over the past 20 years, there has been a significant increase in the prevalence of supplement use. The dietary supplement market has been growing in terms of sales and products available on the market. Consumers are being presented a large number of products, brands, and formulations, distributed through a wide variety of marketing channels. The value of the global dietary supplements market was estimated to be worth nearly USD 152 billion in 2021, and is expected to be worth USD 300 billion by 2028.[1]

19.    In response to consumers' desire for dietary supplements, many companies, like Defendant, have scrambled to manufacture, market, and sell purportedly high dosages or more nutrients, at the same or lower costs, in an effort to gain market share and outsell competitors. Unfortunately, rather than creating the actual high dosage dietary supplements with more nutrients that consumers desire, Defendant makes products with lower dosages and less nutrients than is advertised on the Products' packaging and front labels, and then markets them to consumers through deceptive labeling and packaging claims. In doing so, Defendant misleads consumers into believing that the Products contain higher dosages or more nutrients in each capsule, gummy, or chew than what is actually contained therein.

20.    In contrast to how Defendant labels its Products, Defendant's competitors correctly label and sell their products to show the correct dosage information on the products' front labels. For example, NatureMade's Extra Strength Magnesium 400 mg product contains exactly what is

---

[1] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10421343/

*Swetala v. Quten Research Institute, LLC*
CLASS ACTION COMPLAINT

says: magnesium tablets each containing 400 mg of magnesium.

## NatureMade Magnesium 400 mg[2]




21.     By falsely, misleadingly, and deceptively labeling and advertising the Products, Defendant sought an unfair advantage over its lawfully acting competitors.

### PLAINTIFF'S PURCHASES, RELIANCE, AND INJURY

22.     Plaintiff Anthony Swetala purchased Qunol Extra Strength Turmeric 1000 mg at a Walmart store located at 1110 East Prosperity Ave., Tulare, CA in or around January 2023 in reliance on the Product's front label advertising.

23.     In deciding to purchase the Product, Plaintiff read and relied on the dosage information displayed on the front label, which led Plaintiff to believe that each capsule of the product contained the advertised dosage – *i.e.*, 1,000 mg of turmeric per capsule. At the time of purchase, Plaintiff did not know that the advertised dosage was false and misleading, and that more

---

[2]                    https://www.naturemade.com/products/extra-strength-magnesium-400-mg-softgels?variant=17776026681415

12

than one capsule would need to be consumed to receive the advertised dosage of turmeric.

24.    Plaintiff would not have purchased the Product, or would not have paid as much as he did for it, had he known that each capsule contained only a fraction of the advertised dosage. Plaintiff paid a premium for the Product due to the misleading labelling on the Product's packaging.

25.    The representations on the Products' label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Product labels misrepresent the dosage of each capsule, gummy, or chew.

26.    Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally, prominently, and uniformly placed on the Products' label and packaging with the intent to induce average consumers into purchasing them.

27.    Plaintiff first discovered Defendant's unlawful acts described herein in April of 2024 when he learned that Defendant intentionally misrepresented the dosage in the product that he purchased.

28.    Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to him throughout the Class Period herein.

29.    Plaintiff paid more for the Product, and would only have been willing to pay less or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

30.    For these reasons, the Product was worth less than what Plaintiff paid for it.

31.    Plaintiff would like to, and would consider, purchasing the Products again when he can do so with the assurance that the Products' labels are truthful and consistent with the Products' actual ingredients.

32.    Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products again although he would like to.

33.    Plaintiff lost money as a result of Defendant's deceptive claims and practices in

that he did not receive what he paid for when purchasing the Product.

34.     Plaintiff detrimentally altered his position and suffered damages in an amount equal to the premium he paid for the Product.

35.     The senior officers and directors of Defendant allowed the Products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## SUBSTANTIAL SIMILARITY

36.     Defendant's Qunol Products described herein are substantially similar, as they each contain (1) a dosage and unit representation conspicuously and prominently placed on the primary display panel of the Products' front labels, and (2) require consumption of two or more units to obtain the advertised dosage of nutrients.

37.     The misleading advertising on the Products' front labels are all the same: consumers are led to believe that each capsule, gummy, or chew contains the advertised dosage amount; however, the Products only contain half or a third of the amount of nutrients advertised. Consumers therefore only receive half or a third of the amount of nutrients promised and pay more than what the Products would be worth had Defendant's advertising been true.

## V.    CLASS ACTION ALLEGATIONS

38.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses), for the time period from when the mislabeled Qunol products first entered into the stream of commerce until the present ("Class Period"), defined as follows:

**The Nationwide Class**
All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale during the Class Period.

**The California Subclass**
All California citizens who purchased the Products in California for personal and household use and not for resale during the Class Period.

39.     The Classes and Subclasses described in this complaint will jointly be referred to

the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

40.     Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

41.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

42.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds and members of the Classes are numerous. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

43.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole. In particular, Defendant has failed to disclose the true nature of the Products being marketed as described herein.

44.     There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

- Whether Defendant breached any express warranties made to Plaintiff and the Class;
- Whether Defendant breached any implied warranties made to Plaintiff and the

Class;

- Whether Defendant violated consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;

- Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Products;

- Whether reasonable consumers are likely to be misled by Defendant's advertising and labeling of the Products;

- Whether the Products' challenged representations are material representations made to reasonable consumers;

- Whether the proposed class is suitable for class certification;

- The proper amount of restitution, damages, and punitive damages;

- The proper injunctive relief, including a corrective advertising campaign;

- The proper amount of attorneys' fees.

45.     These common questions of law and fact predominate over questions that affect only individual Class Members.

46.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products, and suffered economic injury because the Products were and still are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Products, Plaintiff and Class Members would not have purchased the Products, or would have paid less for them.

47.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

48.     Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

49.     Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

50.     Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

51.     As a result of the foregoing, class treatment is appropriate.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

***(on behalf of the California Class)***

52.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

53.     California's Unfair Competition Law, Business and Professions Code §17200 (the

UCL") prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

54. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

**Fraudulent**

55. A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

56. As set forth herein, Defendant's claims relating to the Products are likely to mislead reasonable consumers to believe that each capsule, gummy, or chew unit in the Products contained the dosage amount advertised on the Products' front labels.

57. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct. Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to public injunctive relief against Defendant, as set forth in the Prayer for Relief.

58. Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

59. Plaintiff also seeks an order for the disgorgement and restitution of the premium received from the sale of the Products the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs.

**Unlawful**

60. The acts alleged herein are ''unlawful" under the UCL in that they violate at least the following laws:

- By knowingly and intentionally concealing from Plaintiff and the other Class members that each unit of the Products did not contain the advertised dosage;

18

*Swetala v. Quten Research Institute, LLC*
CLASS ACTION COMPLAINT

- By misrepresenting the dosage of the Products on the front label;

- By engaging in the conduct giving rise to the claims asserted in this complaint;

- By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Products;

- By violating California Civil Code §§ 1709-1711 by suppressing material information about the Products;

- By violating the California Commercial Code for breaches of express and implied warranties;

- By violating California's Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug and cosmetics labelling that is "false or misleading in any particular";

- By violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.;

- By violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

61.   Such conduct is ongoing and continues to this date.

62.   Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

**Unfair**

63.   Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and businesses from unfair competition in the marketplace. Such conduct is ongoing and continues to date.

64.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, and portions of the California Sherman Food, Drug,

and Cosmetic Law.

65.     Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

66.      Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

67.     Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Thus, public injunctive relief enjoining Defendant's deceptive practices is proper.

68.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

69.     Class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

70.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

71.     Plaintiff and the Classes were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth and (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations.

**SECOND CAUSE OF ACTION**

**Violations of the False Advertising Law,**

**Cal. Bus. & Prof. Code §§ 17500 _et seq._**

**_(on behalf of the California Class)_**

72.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth herein.

73.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

74.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

75.    As alleged herein, Defendant falsely advertised the Products by falsely representing that each unit of the Products contained the advertised dosage, when in fact, a consumer would need to take two or more units to achieve the advertised dosage.

76.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance on Defendant's false and misleading labeling claims that each unit of the Products contained the advertised dosage.

77.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

78.    Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

79.    As a result, Plaintiff, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

80.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

**THIRD CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**

**Cal. Civ. Code §§ 1750 *et seq.***

***(on behalf of the California Class)***

81.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

82.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

83.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

- § 1770(a)(5): Representing that goods have characteristics, uses, or benefits which they do not have;

- § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another; and

- § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised.

84.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

85.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

86.     On April 24, 2024, Plaintiff sent a notice letter to Defendant's principal place of business which complies with California Civil Code § 1782(a). Plaintiff sent Defendant individually and on behalf of the proposed Class, a letter via Certified Mail, demanding that Defendant rectify the actions described above by providing injunctive and monetary relief to all affected consumers.

87.     More than thirty days have passed since Plaintiff sent Defendant a CLRA letter and

Defendant has failed to take the corrective action described in Plaintiff's letter. Wherefore, Plaintiff seeks damages, restitution, injunctive relief, punitive damages, and attorneys' fees and costs for Defendant's violations of the CLRA.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties,

### Cal. Com. Code § 2313(1)

### (*on behalf of all Classes*)

88.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

89.    Through the Products' label and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

90.    The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned the allegation that Defendant misrepresented the dosage of each unit of the Products.

91.    These representations had an influence on consumers' decisions in purchasing the Products.

92.    Defendant made the above representations to induce Plaintiff and the members of Class to purchase the Products. Plaintiff and the Class members relied on the representations when purchasing Defendant's Products.

93.    Defendant breached the express warranties by selling Products with false and misleading advertised dosage amounts.

94.    That breach actually and proximately caused injury in the form of the price premium that Plaintiff and Class members paid for the Products.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranties

### Cal. Com. Code § 2314

*(on behalf of all Classes)*

95.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

96.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, misrepresented the dosage amount of the Products to Plaintiff and the Class.

97.    Plaintiff and the Class purchased the Products manufactured, advertised, and sold by Defendant, as described herein.

98.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

99.    However, Defendant breached that implied warranty in that the Products did not contain the represented dosage in each unit of the Products, and instead, a person would need to ingest multiple capsules, gummies, or chews to achieve the advertised dosage.

100.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the label of the Products.

101.    Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' price premium.

**SIXTH CAUSE OF ACTION**

**Negligent Misrepresentation**

*(on behalf of all Classes)*

102.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

103.    Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of

information that would influence a consumer's purchasing decision.

104.    During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the amount of nutrients contained in each capsule, gummy, or chew.

105.    Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price.

106.    Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for Products that contained substantially less milligrams per unit than advertised.

107.    Plaintiff and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

108.    Plaintiff and Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

### SEVENTH CAUSE OF ACTION

**Intentional Misrepresentation/Fraud**

***(on behalf of all Classes)***

109.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

110.    Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

111.    During the applicable Class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the dosage amount of each capsule, gummy, or chew. These

representations were material and were uniformly made.

112. As noted in detail above, these representations were false and misleading, as each unit of the Products contained only a fraction of the advertised dosage. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

113. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

114. Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would pay more for a product if they believed they were receiving a higher dosage than that of competitors' lawfully labeled products. For that reason, Defendant misrepresented the dosage of its Products so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Products' claims and rely thereon in their purchases of the Products.

115. Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

116. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

117. Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

118. As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

119. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members Plaintiff and Class Members are therefore entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

**Quasi-Contract/ Unjust Enrichment**

***(on behalf of all Classes)***

120.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

121.    As alleged in detail above, Defendant's false and misleading labelling caused Plaintiff and the Class to purchase the Products at a premium.

122.    In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

123.    It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge a premium for the Products by intentionally withholding information from Plaintiff, or otherwise misrepresenting the Products' qualities.

124.    Plaintiff and the Class seek restitution.

## VII.    PRAYER FOR RELIEF

125.    Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

- For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;
- For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;
- For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding attorneys' fees and costs, consistent with permissible law

and pursuant to only those causes of action so permitted;

- For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

- For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 24, 2024                    **LAW OFFICES OF RONALD A. MARRON**


                                       */s/ Ronald A. Marron*
                                       Ronald A. Marron

                                       **LAW OFFICES OF RONALD A. MARRON**
                                       RONALD A. MARRON
                                       *ron@consumersadvocates.com*
                                       LILACH HALPERIN
                                       *lilach@consumersadvocates.com*
                                       651 Arroyo Drive
                                       San Diego, California 92103
                                       Telephone: (619) 696-9006
                                       Facsimile: (619) 564-6665
                                       ***Counsel for Plaintiff and the Proposed Class***

*Swetala v. Quten Research Institute, LLC*
CLASS ACTION COMPLAINT