**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SWETALA, individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>QUTEN RESEARCH INSTITUTE, LLC,<br><br>Defendant. | Case No.: 1:24-CV-00620-JLT-BAM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT QUTEN RESEARCH INSTITUTE, LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: November 5, 2024<br>Time: 9:00 a.m.<br>Ctrm: 4<br>Judge: Hon. Jennifer L. Thurston |

i

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND.................................................................................. 1

III.  LEGAL STANDARD.......................................................................... 3

IV.   ARGUMENT...................................................................................... 4

    A.   Reasonable Consumers are Misled by Defendant's Misleading Advertising................... 4

        1.   The Products' Front Labels are Affirmatively Misleading............................. 4

        2.   The Products' Rear Labels Do Not Shield Defendant From Liability............................ 6

        3.   Defendant's Remaining Arguments are Unavailing ................................. 10

    B.   Plaintiff's UCL Claims Survive Dismissal ........................................ 12

    C.   Plaintiff Adequately Alleges Claims for Fraud and Negligent Misrepresentation........... 12

    D.   Plaintiff Adequately States a Claim for Breach of Express Warranties ......................... 13

    E.   Plaintiff Adequately States a Claim for Breach of Implied Warranties........................... 15

    F.   Plaintiff Adequately Alleges an Inadequate Remedy at Law ........................................... 15

    G.   Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed ..................................... 16

    H.   Plaintiff Can Maintain His Common Law Claims on Behalf of a Nationwide Class....... 17

    I.   Plaintiff Has Standing to Pursue Injunctive Relief........................................................ 17

V.    CONCLUSION ................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aberin v. Am. Honda Motor Co., Inc.*,
   2018 WL 1473085 (N.D. Cal. 2018) ................................. 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................. 3

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................. 17

*B.K. v. Desert Care Network*,
   2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ................................. 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................. 3

*Brady v. Bayer Corp.*,
   26 Cal. App. 5th 1156 (2018) ................................. passim

*Burton v. Time Warner Cable Inc.*,
   2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) ................................. 4

*Caldwell v. Nordic Naturals, Inc.*,
   --- F.Supp.3d ---, 2024 WL 24325, (N.D. Cal. Jan. 2, 2024) ................................. 7, 8, 10, 11

*Cimoli v. Alacer Corp.*,
   546 F.Supp.3d 897 (N.D. Cal. 2021) ................................. 1, 4, 9

*Cisco Systems, Inc. v. STMicroelectronics, Inc.*,
   77 F.Supp.3d 887 (N.D. Cal. 2014) ................................. 13

*Conley v. Gibson*,
   355 U.S. 41, 47 (1957) ................................. 3

*Davidson v. Kimberly-Clark Corporation*,
   889 F.3d 956 (9th Cir. May. 9, 2018) ................................. 17, 18, 19, 20

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................. 11

iii

*Deras v. Volkswagen Group of America, Inc.*,

   2018 WL 2267448 (N.D. Cal. 2018) ........................................................................ 16

*DiGiacinto v. RB Health (US) LLC*,

   668 F.Supp.3d 950 (N.D. Cal. 2023) ........................................................................ 13

*Dorfman v. Nutramax Labs., Inc.*,

   2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ........................................................ 12

*Ebner v. Fresh, Inc.*,

   838 F.3d 958 (9th Cir. 2016) ..................................................................................... 6

*Eminence Capital, LLC v. Aspeon, Inc.*,

   316 F.3d 1048 (9th Cir. 2003) ................................................................................. 20

*Falk v. Gen. Motors Corp.*,

   496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................. 12

*Harmsen v. Smith*,

   693 F.2d 932 (9th Cir. 1982) ................................................................................... 17

*Hauter v. Zogarts*,

   14 Cal. 3d 104 (1975) .............................................................................................. 13

*In re Hyundai & Kia Fuel Econ. Litig.*,

   926 F.3d 539 (9th Cir. 2019) ................................................................................... 17

*Jackson v. Gen. Mills, Inc.*,

   2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) ........................................................ 19

*Kim v. Bluetriton Brands, Inc.*,

   2024 WL 243343 (9th Cir. Jan. 23, 2024) .............................................................. 10

*Knievel v. ESPN*,

   393 F.3d 1068 (9th Cir. 2005) .............................................................................. 3, 18

*Lemus v. Rite Aid Corp.*,

   613 F.Supp.3d 1269 (C.D. Cal. 2022) ..................................................................... 16

*Lilly v. ConAgra Foods, Inc.*,

   743 F.3d 662 (9th Cir. 2014) ................................................................................... 11

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

*McDonnell Douglas Corp. v. Thiokol Corp.*,
   124 F.3d 1173 (9th Cir. 1997)..................................................................... 14

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023)........................................................................ 7

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021).......................................................... 7, 8, 10, 11

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ....................................................... 12

*Murphy v. Olly Public Benefit Corp.*,
   651 F.Supp.3d 1111 (N.D. Cal. 2023) ........................................................ 15

*Nacarino v. Chobani, LLC*,
   2022 WL 344966 (N.D. Cal. Feb. 4, 2022).................................................. 15

*Pecanha v. Hain Celestial Grp., Inc.*,
   2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ............................................... 14

*Prescott v. Bayer HealthCare LLC*,
   2020 WL 4430958 (N.D. Cal. 2020)............................................................ 16

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072 (C.D. Cal. 1994)............................................................. 4

*Sagastume v. Psychemedics Corp.*,
   2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ............................................ 15

*Scheibe v. Livwell Products, LLC*,
   2023 WL 4414580 (S.D. Cal. July 7, 2023).................................................. 18

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ....................................................................................... 3

*Shank v. Presidio Brands, Inc.*,
   2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) ............................................ 19

*Sims v. Campbell Soup Co.*,
   2018 WL 7568640 (C.D. Cal. Sept. 24, 2018)............................................ 14

v

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................ 15

*Souter v. Edgewell Personal Care Co.*,
   2022 WL 485000 (S.D. Cal. Feb. 16, 2022) ......................................................... 16

*Spirtos v. Allstate Inc., Co.*,
   2003 WL 25900368 (C.D. Cal. 2003) ................................................................... 15

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) .......................................................................... 4, 11

*Steinberg v. Icelandic Provisions, Inc.*,
   2022 WL 220641 (N.D. Cal. Jan. 25, 2022) ......................................................... 10

*Tabler v. Panera LLC*,
   2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ....................................................... 18

*Tucker v. Post Consumer Brands, LLC*,
   2020 WL 1929368 (N.D. Cal. April 21, 2020) ...................................................... 19

*Walcoff v. Innofoods USA, Inc.*,
   2023 WL 3262940 (S.D. Cal. May 4, 2023) ......................................................... 19

*Walters v. Vitamin Shoppe Industries*,
   701 F.App'x 667 (9th Cir. 2017) ................................................................... passim

*Wash. Mut. Bank, FA v. Superior Court*,
   15 P.3d 1071 (Cal. 2001) ...................................................................................... 17

*Watson v. Solid Gold Pet, LLC*,
   2019 WL 3308766 (C.D. Cal. Feb. 22, 2019) ....................................................... 15

*Whiteside v. Kimberly Clark Corp.*,
   108 F.4th 771 (9th Cir. July 17, 2024) ......................................................... passim

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................ passim

**Rules**

Fed. R. Civ. P. 8 ................................................................................................... 3

Fed. R. Civ. P. 8(a)(3) .................................................................................................. 15

Fed. R. Civ. P. 8(e) ...................................................................................................... 4

Fed. R. Civ. P. 12(b) .................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

## I.    **INTRODUCTION**

Plaintiff Anthony Swetala ("Plaintiff") alleges that the advertising and marketing of Defendant Quten Research Institute, LLC's ("Defendant") Qunol dietary supplements ("Products") are deceptive. The dosage representations made on the Products' front labels are misleading because they lead reasonable consumers, like Plaintiff, to believe each unit in the Products contains the advertised dosage amount, when in fact, each unit contains only half or a third of the amount of nutrients advertised.

In its Motion to Dismiss ("Mot."), Defendant argues (1) reasonable consumers are unlikely to be misled, (2) Plaintiff's UCL claim should be dismissed, (3) Plaintiff's fraud and negligent misrepresentation claims fail, (4) Plaintiff's express and implied warranty claims fail, (5) Plaintiff fails to allege inadequate remedies at law, (6) Plaintiff's quasi-contract/unjust enrichment claim fails, (7) Plaintiff cannot maintain common law claims on behalf of a nationwide class, and (8) Plaintiff lacks Article III standing to pursue injunctive relief. None of Defendant's grounds for dismissal are persuasive. Other courts have previously rejected similar arguments and have declined to dismiss cases with nearly identical allegations to this one. *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 902-04 (N.D. Cal. 2021); *Walters v. Vitamin Shoppe Industries*, 701 F.App'x 667, 670 (9th Cir. 2017). Defendant's Motion to Dismiss should be denied.

## II.    **BACKGROUND**

On May 24, 2024, Plaintiff Anthony Swetala ("Plaintiff") filed a class action complaint against Quten Research Institute, LLC. *See* Dkt. No. 1 ("Compl."). Plaintiff's Complaint alleges that Defendant's Qunol dietary supplement products are advertised with specific dosage representations that are false and misleading. Compl., ¶¶ 1-3. For example, the front label of the Qunol Extra Strength Magnesium 420 mg Product prominently represents the quantity of magnesium as "420 mg." Compl., ¶ 13. The front label also represents that the Product contains "120 capsules." *Id*.

The front label of the Qunol Extra Strength Magnesium 420 mg Product is reproduced below:

//

1
2
3
4
5
6
7
8
9
10
11
12
13



14  *See* Compl., ¶ 13. Reasonable consumers understood the dosage representations in a

15  straightforward manner: each capsule will contain 420 mg of magnesium as stated on the front

16  label. *Id*., ¶ 2. Unbeknownst to reasonable consumers, this is not true. On the Product's rear label,

17  Defendant reveals that consumers must take two capsules to receive the advertised dosage of 420

18  mg and that each capsule only contains 210 mg of magnesium. *Id*., ¶¶ 12-13.

19  Like other reasonable consumers, Plaintiff was deceived by Defendant's advertising of the

20  Products. "Plaintiff Anthony Swetala purchased Qunol Extra Strength Turmeric 1000 mg at a

21  Walmart store located at 1110 East Prosperity Ave., Tulare, CA in or around January 2023 in

22  reliance on the Product's front label advertising." Compl., ¶ 22. "In deciding to purchase the

23  Product, Plaintiff read and relied on the dosage information displayed on the front label, which led

24  Plaintiff to believe that each capsule of the product contained the advertised dosage – i.e., 1,000

25  mg of turmeric per capsule. At the time of purchase, Plaintiff did not know that the advertised

26  dosage was false and misleading, and that more than one capsule would need to be consumed to

27  receive the advertised dosage of turmeric." *Id*., ¶ 23. "Plaintiff would not have purchased the

28  Product, or would not have paid as much as he did for it, had he known that each capsule contained

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

only a fraction of the advertised dosage. *Id.*, ¶ 24.

Plaintiff and other consumers have been deceived and suffered injury. *Id.* Plaintiff brings this class action on behalf of himself and similarly situated members of a nationwide class and California subclass, alleging violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation/fraud, and quasi contract/unjust enrichment. *Id.*, ¶¶ 38, 52-124.

### III.    LEGAL STANDARD

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the purpose of pleading a "short and plain statement of the claim" is merely to "give Defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b) states that "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). However, Rule 12(b) does provide seven defenses that a party may assert….by motion." *See* Fed. R. Civ. P. 12(b). Among the available defenses under Rule 12(b) is a defense "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a Plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give

3

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted.").

## IV.    <u>ARGUMENT</u>

### A. Reasonable Consumers are Misled by Defendant's Misleading Advertising

#### 1. *The Products' Front Labels are Affirmatively Misleading*

Plaintiff properly alleges that reasonable consumers are likely to be deceived by the Products' front labels. Here, the Products' front labels communicate a specific dosage amount to consumers. For example, the front label of the Qunol Extra Strength Magnesium 420 mg Product prominently represents – without any qualification – the quantity of magnesium as "420 mg." Compl., ¶ 13. The front label also represents that it contains "120 capsules." *Id*. Reasonable consumers would therefore expect each capsule to contain 420 mg of magnesium. Unfortunately, this is not the case. On the Product's rear label, Defendant reveals that consumers must take two capsules to receive the advertised dosage of 420 mg and that each capsule only contains 210 mg of magnesium. *Id*. In this context, it is easy to see how reasonable consumers would be misled. Other courts have rejected the argument that similar dosage misrepresentations are not misleading to reasonable consumers. *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 902-04 (N.D. Cal. 2021) (rejecting argument that dosage misrepresentations were not likely to deceive reasonable consumers; finding "750 mg" representation on front label of gummy vitamins container actionable under CLRA, notwithstanding product's back-label clarification of dosage as per serving rather than per gummy).

Defendant argues, "[t]here is no deception where the label is truthful." Mot. at 9:8.

However, the Products' front labels are not truthful: they advertise specific dosage amounts of nutrients which are inaccurate, as each capsule, gummy, or chew contains only half or a third of the advertised dosage amount. Compl., ¶¶ 3, 37. Defendant also argues, "the front label of the Extra Strength Magnesium Product indicates that the total dosage amount per serving is 420 mg, which is true." Mot. at 14:1-2. However, the front label does not indicate that the total dosage amount *per serving* is 420 mg. *See* Compl., ¶ 13. The Products' front labels contain no qualifier or statement (*e.g.*, "per serving" or "per two capsules") indicating that consumers are required to take multiple capsules to obtain the advertised dosages. Indeed, Defendant later admits that the Products' front labels "do not state the serving size or the number of servings contained therein." Mot. at 20:11-12. As such, Plaintiff reasonably understood that each capsule would contain the dosage advertised on the front label. *See Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018) ("The front of the product makes no attempt to warn the consumer that a one-a-day jar of gummies is in fact full of two-a-day products"); *see also Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. July 17, 2024) (representations on front label, without any qualifications, were plausibly misleading).

Nonetheless, Defendant argues "[t]here is nothing from which to infer that there is a one-to-one correlation between the dosage amount and the number of capsules, gummies, or chews." Mot. at 20:8-9. However, the only information on the front label regarding dosage is that the Products contain, for example, "Magnesium 420 mg" and "120 capsules." *See* Compl., ¶ 13. Without any further information on the front label, a consumer could reasonably conclude that the specified dosage applies per capsule. *See Brady*, 26 Cal. App. 5th at 1172; *see also Walters v. Vitamin Shoppe Industries*, 701 F.App'x 667, 670 (9th Cir. 2017) (reversing dismissal of fraudulent misrepresentation claim where front panel of products included a specific dosage representation without any indication as to whether dosage was per serving or per unit); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (California's FAL, CLRA, and UCL "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").

Defendant's reliance on *Ebner* is unfounded. *See* Mot. at 19:22 – 20:5. There, the court held that there was an "absence of any statement or other depictions anywhere on the package about [the alleged issue]." *Ebner v. Fresh, Inc*., 838 F.3d 958, 966 (9th Cir. 2016). Last month, the Ninth Circuit made clear that its ruling in *Ebner* was not that the plaintiff failed to prove that the label's representations were deceptive, but that the label made *no representation at all*." *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 780 (9th Cir. July 17, 2024) (italics in original). By contrast, here, the dosage misrepresentations are plainly stated on the Products' front labels and these representations are contradicted by additional information on the back of the Products. Because the Products' front labels are affirmatively misleading, Defendant's Motion should be denied.

### 2.  *The Products' Rear Labels Do Not Shield Defendant From Liability*

Defendant argues that reasonable consumers would not be misled because the Supplement Facts sections located on the Products' rear labels "plainly state the serving size for the dosage amount and the number of servings." Mot. at 19:3-4. However, the Products' rear labels do not shield Defendant from liability for misrepresentations on the Products' front labels. The Ninth Circuit has made clear that "reasonable consumers" should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams v. Gerber Prods. Co*., 553 F.3d 934, 939-40 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."); *see also Brady v. Bayer Corp*., 26 Cal. App. 5th 1156, 1167-77 (2018) (rejecting argument that reasonable consumers "would read the label for the dosage[;]" serving size on back label indicating that two gummies a day were required did not shield defendant from liability for its misleading "One-A-Day" brand name, which implicated daily intake should be one per day). The Ninth Circuit recently confirmed, "*Williams* and *Brady* stand for the proposition that if a product's front label is plausibly misleading to reasonable customers, then the court does not

consider the back label at the pleadings stage. Whether the back label ultimately defeats the plaintiff's claims is a question left to the fact-finder." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. July 17, 2024).

Relying on *McGinity* and *Moore*, Defendant argues that the Products' front labels are ambiguous and that reasonable consumers should be required to review the Products' rear labels to resolve any ambiguity. *See* Mot. at 20-21, citing *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1097 (9th Cir. 2023) and *Moore v. Trader Joe's Co*., 4 F.4th 874, 881 (9th Cir. 2021). Here, however, the Products' front labels are affirmatively misleading and do "not include the sort of inherent ambiguity which might put a consumer on notice to investigate the meaning of the label further." *See Caldwell v. Nordic Naturals, Inc*., --- F.Supp.3d ---, No. 23-cv-02818, 2024 WL 24325, at *5-6 (N.D. Cal. Jan. 2, 2024). In *McGinity*, the term "Nature Fusion" presented inherent ambiguity because the term "Fusion" indicates a mix of products but does not specify that mix— putting the consumer on notice that the product might include both natural and synthetic ingredients with an unspecified portion of each. 69 F.4th at 1095-99; *see also Whiteside*, 108 F.4th at 780 (finding "Nature Fusion" so devoid of any concrete meaning that there was nothing "from which *any* inference could be drawn or on which *any* reasonable belief could be based about") (italics in original). In *Moore*, the phrase "100% New Zealand Manuka Honey" was ambiguous because the advertised "100%" could relate either to the place of origin (New Zealand) or floral source (Manuka)—based on the syntax of the phrase. 4 F.4th at 882. Dissimilarly here, the Qunol Extra Strength Magnesium "420 mg" dosage representation does not innately communicate two different meanings, leaving a consumer to investigate which applies. "420 mg" commonly and clearly denotes "four hundred and twenty milligrams." *See Caldwell*, 2024 WL 24325, at *6 (distinguishing *McGinity* and *Moore*; finding a "2x" moniker was not inherently ambiguous and clearly denotes "two times."). Additional information that could be investigated (that the Product's capsules contain only a fraction of the advertised dosage) is contradictory to and not a mere clarification of an ambiguity in the front label. Because the Products' front label dosage representations, *e.g.*, "420 mg" are not inherently ambiguous, "a reasonable consumer would not have been on notice to investigate the meaning of the front label further—even by reviewing the

7

back label of the product at issue; this alone ends the inquiry and distinguishes the case from *McGinity* and *Moore*." *Caldwell*, 2024 WL 24325 at *6; *see also Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024) (discussing *Brady*; finding "defendant was precluded from relying on the back label because the plaintiff had plausibly alleged that reasonable customers would see the front label as making an unambiguous representation. [] Put another way, reasonable consumers would not necessarily require more information before concluding that they needed to take only one vitamin daily.").

Defendant next argues, "any reasonable consumer purchasing dietary supplements would look for information regarding how they should use those products prior to ingesting them and, to do so, would review the label as a whole." Mot. at 22:6-8. However, the California Court of Appeals has expressly rejected the "untenable proposition" that "the hypothetical 'reasonable consumer' would, as a matter of law, examine the makeup of a daily vitamin supplement[.]" *Brady*, 26 Cal. App. 5th at 1160 (rejecting the position that the reasonable consumer "as a matter of law, necessarily look[s] behind the front label of a jar of [Defendant's] gummies and in the course of that action, would discover that not one gummy but two is what the company recommends.").

Defendant's position is also contrary to the Ninth Circuit's decision in *Walters*. There, the Ninth Circuit addressed nearly identical allegations regarding misleading dosages on a dietary supplement, and held that consumers are not "required, as a matter of law, to cross-reference statements on a product's label against information found in small print elsewhere on the product." *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017) ("*Walters II*"). In *Walters*, the plaintiff, who was a medical doctor, alleged that multiple products sold by supplement retailer Vitamin Shoppe were deceptive because the front labels contained misleading dosage representations. *See Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-CV-01173-PK, 2015 WL 3916972, at *2 (D. Or. June 25, 2015) ("*Walters I*"), aff'd in part, rev'd in part and remanded by *Walters II*, 701 F. App'x 667 (9th Cir. 2017). For example, the *Walters* plaintiff purchased dietary supplement capsules which promised "2000 mg" of L-Arginine-Ornithine, but failed to inform the consumer that he needed to consume two capsules to receive that dosage. *Id*. The Ninth Circuit held, "[a]pplying the logic of *Williams* to this case, Walters did not have a duty to validate claims

8

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

on the front of a product's label by cross-checking them against information contained in small print on the back." *Id*., at 670. Just because *Walters* did not "read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests." *Id*. ("Consumers review the small print on a product's label to learn additional details about a product, not to correct potentially misleading representations found on the front.") (citing *Williams*, 552 F.3d at 939 (holding that "reasonable consumers" should not "be expected to look beyond misleading representations on the front of the box to discover the truth [elsewhere on] the box.")).

Cimoli v. Alacer Corp., 546 F. Supp. 3d 897, 903 (N.D. Cal. 2021) is also instructive. There, the plaintiff alleged that when he purchased Vitamin C gummies, he relied on the dosage information stated on the front label, which read "750 mg" and "45 Gummies." *Cimoli*, 546 F.Supp.3d at 900. The plaintiff contended that reasonable consumers—like himself—believed that *each* gummy contained 750 mg of Vitamin C. *Id*. The defendant filed a motion to dismiss arguing that the alleged misrepresentations are not deceptive because the product's back label clarifies that the dosage of the Vitamin C is per serving, not per gummy. *Id*., at 903. Relying on *Walters v. Vitamin Shoppe Indus., Inc.*, the district court denied the defendant's motion, finding that the plaintiff "properly alleged an actionable misrepresentation." *Id*.

The same reasoning applies here. Plaintiff purchased a product which promised a specific dosage amount of nutrients. Just because Plaintiff did not "read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests." *Walters II*, 701 F. App'x at 670. Indeed, if the plaintiff in *Walters*, who is a medical doctor, is not expected to peruse through the back of the product to determine whether the representation on the front of the label is true, neither should Plaintiff. Thus, the Court should reject Defendant's request which places the onus on consumers to discover the truth, expecting them to investigate the Products' rear label and Supplement Facts to reveal the truth about the Products' front label dosage misrepresentations.

Further, the Supplement Facts sections do not confirm the Products' front labels. They provide additional information which *contradicts* the dosage representation on the front label. Defendant's expectation that consumers should scour the back of the Products to obtain this additional, contradictory information not only belies ordinary consumer behavior, but has also

9

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

been expressly rejected by the Ninth Circuit and the California Court of Appeals. *Walters II*, 701 F. App'x at 670; *Brady*, 26 Cal. App. 5th at 1160.

Defendant's cited cases are inapposite. *See* Mot. at 22:15-28. For example, in *Kim*, the Ninth Circuit held that "Arrowhead Brand's label is not likely to mislead a reasonable consumer to believe that the water was sourced exclusively from Arrowhead Mountain" where "the term 'Arrowhead' [was] followed by the registration symbol '®' and the word 'Brand.'" *Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343, at *1 (9th Cir. Jan. 23, 2024). In *Steinberg*, the court held, "the trade name 'Icelandic Provisions' on the Product's front label does not represent that the Product is made in Iceland." *Steinberg v. Icelandic Provisions, Inc.*, No. 21-cv-05568, 2022 WL 220641, at *5 (N.D. Cal. Jan. 25, 2022). These cases are inapposite, as Plaintiff does not allege that Qunol's brand name is misleading to reasonable consumers. In fact, Defendant recognizes in its Motion that "[t]here is no allegation here that the Qunol brand name is misleading in any way." Mot. at 25:6-7. Plaintiff challenges Defendant's misleading dosage representations, such as "420 mg" or "1000 mg." These representations are not brand or trade names, and are not ambiguous as to their meaning. *See Caldwell*, 2024 WL 24325, at *6 (finding an advertisement of "2x" clearly denotes "two times.").

### 3. *Defendant's Remaining Arguments are Unavailing*

Defendant contends that accurate dosage representations on competitor products (*e.g.*, advertising "400 mg" on product's front label where each capsule contains 400 mg of magnesium) "does not establish deception." Mot. at 23:17. However, Plaintiff does not allege that the Qunol Products are misleading due to the advertising on competitor products. Rather, Plaintiff alleges that the Qunol Products are misleading to reasonable consumers because the Products' front labels contain inaccurate dosage representations, with each capsule, gummy, or chew containing only a fraction of the advertised dosage. *See* Compl., ¶¶ 3, 37.

Defendant argues that, as in *Moore*, the Court should consider "other contextual information, including price differentials regarding the Products" to refute any notion of deception. *See* Mot. at 13:26-28. However, since there is no inherent ambiguity in the Products' front labels, other information should not be considered. *See Whiteside*, 108 F.4th at 781 ("a front label is

ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation. Only in these circumstances can the back label be considered at the dismissal stage."). Additionally, the price differential in *Moore* was significant: the *Moore* plaintiff purchased a $13.99 jar of honey, allegedly believing it to be 100% Manuka honey, while a jar containing 92% Manuka flower nectar costs approximately $266.00. *Moore*, 4 F.4th at 878. The *Moore* court held that reasonable consumers "would thus not reasonably expect a jar of honey that is "100%" derived from Manuka to cost only $13.99." *See id*., at 883-84. Here, a $2 or $3 price variation between two magnesium supplement products is not comparable to the $250 price difference in *Moore* which "signal[ed] to a reasonable consumer that the product has a relatively lower concentration of honey derived from Manuka flower nectar." *See id*. Furthermore, district courts "find that consumers should not be required to cross-check information on other products to discern the precise strength or potency of a product." *Caldwell*, 2024 WL 24325 at *6. In this case, it is unreasonable to expect Plaintiff or other consumers to investigate and review the prices of all dietary supplement competitor products to determine whether Defendant's front-label dosage misrepresentations are misleading.

At the very least, the Court should decline to make the factual determination urged by Defendant as to how consumers understand or interact with the Products' labels, particularly in light of the Ninth Circuit and Court of Appeal's guidance in *Walters*, *Williams*, and *Brady*. *Brady*, 26 Cal. App. 5th at 1172 ("Bayer feels the reasonable consumer will be so motivated to ascertain the precise amounts of vitamins that of course he or she will scrutinize the back. We don't think such a conclusion can be made as a matter of law at the pleading stage."); *Williams*, 552 F.3d at 938 ("whether or not a reasonable consumer would be misled is usually "a question of fact not appropriate for determination [on a motion to dismiss]."); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014). Even if the Court finds that Defendant's reading of its own label is one plausible interpretation that consumers may understand from the Product's label, the Court should still refuse to grant Defendant's motion. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

1    which are plausible, plaintiff's complaint survives a motion to dismiss [unless] defendant's
2    plausible alternative explanation is so convincing that plaintiff's explanation is implausible.").

3    **B. Plaintiff's UCL Claims Survive Dismissal**

4        Defendant argues that Plaintiff's UCL claim must be dismissed because "there is no
5    deception." This argument is refuted in Section III(A), *supra*. Because Plaintiff adequately alleges
6    that reasonable consumers are likely to be deceived due to Defendant's affirmative
7    misrepresentations (*see* Section III(A), *supra*), Plaintiff's UCL claim under the fraudulent prong
8    survives. Further, because Plaintiff has adequately pled that Defendant violates the CLRA and
9    FAL, he also adequately alleged that Defendant's conduct is "unlawful" under the UCL. *See Mui*
10   *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) ("Plaintiffs can plead a
11   UCL violation under the 'unlawfulness' prong by pleading that a business practice violated a
12   predicate federal, state, or local law" such as the CLRA and California's express and implied
13   warranty statutes.").

14       Similarly, because Plaintiff has established that Defendant's conduct violates the CLRA,
15   Plaintiff has adequately demonstrated that Defendant's conduct is "unfair" under the UCL. *Falk*
16   *v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) ("This [conduct] constitutes
17   a violation of the CLRA, which in turn can be an unfair practice under the UCL."). Here, there is
18   no benefit obtained by consumers through Defendant's deceptive labeling practices. *See Dorfman*
19   *v. Nutramax Labs., Inc.*, No. 13cv0873 WQH (RBB), 2013 WL 5353043, at *13 (S.D. Cal. Sept.
20   23, 2013) (allegations regarding false and misleading claims on label "plausibly suggest that
21   Defendants engaged in an immoral, unethical, oppressive or unscrupulous business practice that
22   caused injury to consumers which outweighed its benefits" under the UCL) (internal quotation
23   marks omitted).

24       Finally, Plaintiff adequately alleges economic injury arising out of these predicate claims.
25   *See* Compl., ¶¶ 22-24, 29, 33-34. Defendant's Motion should be denied.

26   **C. Plaintiff Adequately Alleges Claims for Fraud and Negligent Misrepresentation**

27       Defendant argues Plaintiff's fraud and negligent misrepresentation claims fail under the
28   reasonable consumer standard. Mot. at 28:2-3. This argument was refuted in Section III(A), *supra*.

12

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Defendant also argues that Plaintiff fails to plead knowledge of falsity and intent to defraud. Not so. The Complaint demonstrates that Defendant knew its dosage representations were false, misleading, or incomplete. Specifically, Plaintiff alleges that while Defendant prominently advertises the Qunol Products as containing a specific dosage amount, "each capsule does not contain the advertised dosage. Instead, each capsule, gummy, or chew contains only a fraction of the advertised dosage…" Compl., ¶¶ 2-3. Plaintiff alleges, "Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price…" Compl., ¶¶ 112-113. Further, "Defendant knew that consumers would pay more for a product if they believed they were receiving a higher dosage than that of competitors' lawfully labeled products. For that reason, Defendant misrepresented the dosage of its Products so that Defendant could realize greater profits." *See* Compl., ¶ 114. These allegations adequately show knowledge of falsity and intent to deceive. *See Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F.Supp.3d 887, 898 (N.D. Cal. 2014) (denying motion to dismiss negligent and intentional misrepresentation claims where plaintiff pleaded "sufficient facts from which it can be inferred that defendant either knew or should have known that the information provided was false or incomplete."); *DiGiacinto v. RB Health (US) LLC*, 668 F.Supp.3d 950, 968 (N.D. Cal. 2023) (denying motion to dismiss fraud claim where plaintiff alleged packaging of product was false and misleading, defendant knew its packaging was false and misleading, and defendant intended to induce consumers to purchase the product at a premium price).

**D. Plaintiff Adequately States a Claim for Breach of Express Warranties**

Defendant's argument that Plaintiff's express warranty claim fails because his CLRA, FAL, and UCL claims fail should be denied for the reasons discussed in Section III(A), *supra*.

For a plaintiff to state a claim for breach of warranty, he must allege that: (a) Defendant made a warranty; (b) the product did not comply with the warranty at the time of sale; (c) plaintiff's injury was proximately caused by the defective nature of the product; and (d) the plaintiff suffered damage. *Hauter v. Zogarts*, 14 Cal. 3d 104, 105 (1975). Here, Plaintiff alleges (1) Defendant's dosage representations are affirmations of fact that the Products contain a specific dosage of nutrients; (2) the affirmations of fact and promises became part of the basis of the bargain to

13

1   purchase the Product when Plaintiff relied on the dosage misrepresentation when purchasing the

2   Product; and (3) because the dosage misrepresentation was false or misleading, the warranty was

3   breached, and (4) Plaintiff was injured.

4           Defendant argues "Plaintiff fails to plead an affirmation of fact or promise." Mot. at 29:26

5   – 30:8. However, the Complaint alleges that the Products' front labels represent a specific dosage

6   amount of nutrients, *e.g.*, "420 mg." The Products do not comply with these dosage representations

7   because each capsule, gummy, or unit contains only a half or a third of the advertised dosage

8   amount. Compl., ¶¶ 3, 37.  These allegations are sufficient at the pleadings stage. *See, e.g., Allred*

9   *v. Kellogg Co.*, 2018 WL 1158885, at *6 (S.D. Cal. Feb. 23, 2018) ("While Kellogg continues to

10  argue the labeling of its product contains a factually true statement [], the statement can be

11  misleading based on the assumption of the reader. Whether the label actually provided a warranty

12  and is likely to deceive a consumer are not appropriate questions to decide on a dismissal

13  motion."); *Sims v. Campbell Soup Co.*, No. EDCV18668PSGSPX, 2018 WL 7568640, at *9 (C.D.

14  Cal. Sept. 24, 2018) ("Plaintiff has pointed to statements on the V8 Splash labels that she alleges

15  created an express warranty. Whether or not they actually did depend on how they would be

16  interpreted by consumers. The Court concludes that this is a factual question that cannot be

17  determined on a motion to dismiss.").

18          Defendant's argument that the dosage representation is "an ambiguous statement" is

19  refuted in Section III(A), *supra*. There is no question that the phrase "Extra Strength Magnesium

20  420 mg" denotes "four hundred and twenty milligrams" of magnesium. Notwithstanding, to the

21  extent Defendant presents its own interpretation of the dosage representations, the proper

22  interpretation of those representations and whether they constitute an affirmation of fact is a

23  question of fact that is premature at the pleading stage. *See McDonnell Douglas Corp. v. Thiokol*

24  *Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997); *Pecanha v. Hain Celestial Grp., Inc.*, No. 17-CV-

25  04517-EMC, 2018 WL 534299, at *8 (N.D. Cal. Jan. 24, 2018) ("Consistent with the [reasonable

26  consumer standard], whether there was a breach of the warranty — i.e., that the deodorant products

27  are [in accordance with the representations on the package]—is a question of fact that cannot be

28  resolved at the 12(b)(6) phase."); *Watson v. Solid Gold Pet, LLC*, No. CV 18-6479 PSG (SSx),

2019 WL 3308766, at *5 (C.D. Cal. Feb. 22, 2019) ("the Court finds that whether Defendant has breached its express warranty is a question of fact that is to be determined through this suit.").

Last, Defendant argues Plaintiff failed to allege reliance. Mot. at 30:9-13. Not so. The Complaint alleges, "[i]n deciding to purchase the Product, Plaintiff read and relied on the dosage information displayed on the front label, which led Plaintiff to believe that each capsule of the product contained the advertised dosage – *i.e.*, 1,000 mg of turmeric per capsule." Compl., ¶ 23. At the time of purchase, Plaintiff did not know that the advertised dosage was false and misleading, and that more than one capsule would need to be consumed to receive the advertised dosage of turmeric." *Id*. The Complaint further alleges, "Plaintiff would not have purchased the Product, or would not have paid as much as he did for it, had he known that each capsule contained only a fraction of the advertised dosage." *Id*., ¶ 24. These allegations are sufficient to allege reliance.

**E.  Plaintiff Adequately States a Claim for Breach of Implied Warranties**

Defendant argues that Plaintiff's implied warranty claim fails because Plaintiff's express warranty fails. Not so. *See* Section III(D), *supra*.

**F.  Plaintiff Adequately Alleges an Inadequate Remedy at Law**

Defendant argues Plaintiff's equitable claims should be dismissed because he has an adequate legal remedy. Mot. at 30:23 – 31:10, citing *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020). However, "[a] number of district court cases since *Sonner* have concluded that it has minimal application at the pleading stage." *Murphy v. Olly Public Benefit Corp*., 651 F.Supp.3d 1111, 1129 (N.D. Cal. 2023). Plaintiffs may seek "relief in the alternative or different types of relief." *Nacarino v. Chobani, LLC*, No. 20-cv-7437-EMC, 2022 WL 344966, at *10 (N.D. Cal. Feb. 4, 2022) (quoting Fed. R. Civ. P. 8(a)(3)); *see also id*. (quoting *Sagastume v. Psychemedics Corp*., No. CV 20-6624 DSF (GJSx), 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.")).The Court should decline to dismiss Plaintiff's claims for equitable relief at this stage. *Id*.

Moreover, the equitable remedy of an injunction is appropriate where plaintiffs suffer continuing injury. *See Spirtos v. Allstate Inc., Co*., No. CV 02–8798, 2003 WL 25900368, at *4 (C.D. Cal. 2003). This is especially true here because injunctive relief to halt Defendant's

15

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

fraudulent advertising is necessary to redress the future risk of the same harm.  Here, reasonable consumers, like Plaintiff, place great trust in the makers of over-the-counter dietary supplement products, like Defendant. *See, e.g., Brady v. Bayer Corp.*, 26 Cal.App.5th 1156, 1159 (2018) ("Americans…rely not only on their personal physicians…but upon pharmaceutical companies whose closely regulated research, production and merchandising have taken the place of expertise the average citizen is unable to develop"). Plaintiff's allegation that he would like to purchase the Products again supports the inference that he may purchase the Products in the future on the belief that they are accurately labeled. *See Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102, 2020 WL 4430958, at *7 (N.D. Cal. 2020) ("Even though the named Plaintiffs may now know that reviewing the label could reveal some misunderstanding, it is plausible that they would forget to do so or instead choose to rely on Defendant's principal representations."). A legal remedy is not adequate in these circumstances, and it is therefore appropriate to permit Plaintiffs to assert the equitable remedy of an injunction. *See Souter v. Edgewell Personal Care Co.*, No. 20-cv-1486, 2022 WL 485000, at *13 (S.D. Cal. Feb. 16, 2022) ("The Court agrees with Plaintiff that *Sonner* is inapplicable because it does not apply to claims of false advertising that may result in a future harm…"); *Deras v. Volkswagen Group of America, Inc*., 2018 WL 2267448, at *6 (N.D. Cal. 2018) (court finding "no bar to the pursuit of alternative remedies at the pleadings stage" where plaintiffs argued legal remedy was inadequate) (citing *Aberin v. Am. Honda Motor Co., Inc*., 2018 WL 1473085, at *9 (N.D. Cal. 2018)); *Lemus v. Rite Aid Corp.*, 613 F.Supp.3d 1269, 1283 (C.D. Cal. 2022) ("Plaintiff has alleged that he and other consumers 'will not be able to rely on the labels in the future' if the labelling or content of the Medication is not changed. [] As a result, Plaintiff has plausibly premised his claims for equitable relief on the possibility of future harm and it would be improper to dismiss such claims at this early stage of the litigation.").

### G.  Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed

Defendant argues, "'[b]ecause all of Plaintiff's theories fail, [he] cannot show actionable deception or wrongdoing required for an unjust enrichment claim.'" Mot. at 31:11-16. For the reasons discussed in Section III(A)-(F), *supra*, Plaintiff's theories do not fail. In the Complaint, Plaintiff alleges "Defendant's false and misleading labelling caused Plaintiff and the Class to

16

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

purchase the Products at a premium" and "[i]n this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense." Compl., ¶¶ 121-122. These allegations are sufficient to state an unjust enrichment/quasi-contract claim. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (allegations that defendant "had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" were sufficient).

### H. Plaintiff Can Maintain His Common Law Claims on Behalf of a Nationwide Class

Defendant argues that Plaintiff "fails to identify under which states' law he attempts to bring" nationwide claims and therefore, the nationwide class must be dismissed. Mot. at 31:19-27. As an initial matter, the Complaint identifies California law for Plaintiff's breach of express and implied warranty claims on behalf of a putative nationwide class. *See* Compl., ¶¶ 88-101; *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) ("By default, California courts apply California law ....") (citing *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1080–81 (Cal. 2001))); *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982) (noting that a district court sitting in diversity is "required to apply the substantive law of the state in which it sits, including choice-of-law rules"). Notwithstanding, Defendant has failed to identify any statutory basis requiring common law claims to be pleaded by reference to a particular state, and the Court should decline to require such a rule. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021, 2024 WL 1343305, at fn. 2 (C.D. Cal. Feb. 1, 2024) (regarding decisions requiring putative class action common law claims to be pleaded by reference to a particular state, finding "the Court is not aware of a statutory basis for this rule and declines to apply it here.").

### I. Plaintiff Has Standing to Pursue Injunctive Relief

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because Plaintiff is now aware that the Products' dosage representations do not promise that each capsule, gummy, or chew will contain the advertised dosage amount. *See* Mot. at 32:16-20. However, the Ninth Circuit has rejected the argument that a "previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction" in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966-69 (9th Cir. May. 9, 2018)

17

("*Davidson*"). The *Davidson* Court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*., at 969. To demonstrate that threat of future harm, a plaintiff must make "plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to…" *Davidson*, 889 F.3d at 969–70. Here, Plaintiff alleges that he "would like to, and would consider, purchasing the Products again when he can do so with the assurance that the Products' labels are truthful and consistent with the Products' actual ingredients."[1] Compl., ¶ 31. Yet, "Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products again although he would like to." *Id*., ¶ 32. This harm is sufficient to confer standing to seek injunctive relief. *Davidson*, 889 F.3d at 967; *see also Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (when ruling on a motion to dismiss, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.").

Defendant argues, "district courts within the Ninth Circuit routinely find similar allegations to be insufficient to establish any actual or imminent harm." Mot. at 33:7-8. However, the cases cited by Defendant are distinguishable from the present case and from *Davidson*, as the plaintiffs only alleged the possibility of future injury by alleging that they "may" purchase the products in the future. *See Scheibe v. Livwell Products, LLC*, 2023 WL 4414580, at *9 (S.D. Cal. July 7, 2023) (distinguishing *Davidson* where plaintiff alleged that he "may wish to rely on Defendant's label representations and purchase the Products in the future" and finding plaintiff did not allege "that he seeks to purchase the Products again in the future"); *see also Tabler v. Panera LLC*, 2019 WL 5579529, at *8 (N.D. Cal. Oct. 29, 2019) ("Plaintiff still fails to allege any future injury that is

---

[1] Defendant argues, "there is no allegation that the 'actual ingredients' in the Products are misstated." Mot. at 33:6. However, the front labels of the Products advertise a specific dosage amount of nutrients that are not truthful. The actual ingredients in the Products are therefore misstated.

1  'certainly impending.' Instead, Plaintiff alleges only the *possibility* of future injury arising from

2  the fact that Plaintiff '*may* purchase the Products in the future.'") (italics in original). By contrast,

3  here, Plaintiff adequately alleges that he would like to purchase the Products in the future. *See*

4  Compl., ¶¶ 31-32. Plaintiff adequately alleges future harm. *Davidson*, 889 F.3d at 969–70.

5        Defendant also argues, "to the extent [Plaintiff] is confused in the future, the back labels

6  explicitly disclose the serving size required to achieve the dosage amount." Mot. at 32:18-20.

7  However, the Ninth Circuit has made clear that "reasonable consumers" should not "be expected

8  to look beyond misleading representations on the front of the box to discover the truth [elsewhere

9  on] the box." *Williams v. Gerber Prods. Co*., 553 F.3d 934, 939-40 (9th Cir. 2008); *see also Shank*

10  *v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25,

11  2018) (rejecting argument that the plaintiff could read labels in the future to determine whether

12  products were "all natural"); *see also Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-

13  YGR, 2020 WL 1929368, at *6 (N.D. Cal. April 21, 2020) ("Absent injunctive relief, plaintiff

14  would not know whether honey is in fact a significant sweetener in defendant's product based on

15  the front of the cereal box. Nor is the onus on plaintiff to consult the ingredient list to try to discern

16  this fact.").

17        Defendant's remaining authorities on this issue are unavailing. In both cases cited by

18  Defendant, there was no threat of future injury because the front labels of the products were

19  accurate. *See, e.g*., *Jackson v. Gen. Mills, Inc*., No. 18-cv-2634-LAB (BGS), 2019 WL 4599845,

20  at *5 (S.D. Cal. Sept. 23, 2019) (plaintiff failed to allege facts that she was misled; finding weight

21  marked on the front of cereal boxes accurate); *Walcoff v. Innofoods USA, Inc*., 2023 WL 3262940,

22  at *7 (S.D. Cal. May 4, 2023) ("Plaintiff does not challenge the information on the front labels of

23  each of the at-issue Products, which state that they contain '4g net carbs' and '3g sugars' per

24  serving."). By contrast, here, the dosage representations on the front of the Products' labels are not

25  accurate, as each unit of the Products contains only a half or a third of the advertised dosage

26  amount. Due to the misrepresentations on the Products' front labels, "Plaintiff will be unable to

27  rely on the Products' advertising or labeling in the future, and so will not purchase the Products

28  again although he would like to." *See* Compl., ¶ 32. These allegations are sufficient to confer

19

*Swetala v. Quten Research Institute, LLC*, Case No. 1:24-CV-00620-JLT-BAM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT

standing. *See Davidson*, 889 F.3d at 969-970. Defendant's Motion should be denied.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. If the Court dismisses any portion of the Complaint, then Plaintiff respectfully requests leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: August 22, 2024                    Respectfully Submitted,


/s/ *Ronald A. Marron*
Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
LILACH HALPERIN
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiff and the Proposed Class***