1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11   ANTHONY SWETALA, individually and
     on behalf of all others similarly situated
12   and the general public,

13                            Plaintiff,

14            v.

15   QUTEN RESEARCH INSTITUTE, LLC,

16                            Defendant.

17

Case No. 1:24-cv-00620-JLT-BAM

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS

(Doc. 20)

18                         **I.     INTRODUCTION**

19          Before the Court is Quten Research Institute, LLC's motion to dismiss Anthony Swetala's

20   complaint.  (Doc. 20.)  For the reasons set forth below, Defendant's motion to dismiss is granted

21   in part and denied in part.

22                         **II.     BACKGROUND**

23          Defendant makes, distributes, sells, and markets a wide variety of dietary supplements

24   under the brand name Qunol.  (Doc. 1, ¶ 1.)  In January 2023, Plaintiff purchased Defendant's

25   Qunol Extra Strength Tumeric 1000mg supplement.  (*Id.*, ¶ 22.)  Plaintiff relied on the front label,

26   which led Plaintiff to believe that each capsule of the product contained the advertised dosage of

27   1,000mg of turmeric per capsule, to select and purchase Defendant's product.  (*Id.*, ¶ 23.)

28   Plaintiff alleges that he reasonable believed that each capsule contained the full 1,000mg dosage

1   but later recognized that "more than one capsule would need to be consumed to receive the

2   advertised dosage of turmeric." (*Id.*)  Plaintiff alleges that if he had known that one capsule did

3   not contain the full dosage, he would not have purchased the product or would have paid

4   significantly less for them.  (*Id.*, ¶ 24.)  Based on these alleged misrepresentations, Plaintiff seeks

5   to represent a class of all individuals who purchased one of eleven substantially similarly

6   deceptive Qunol products in California for recovery of damages, restitution, disgorgement,

7   punitive damages, and injunctive relief.[1]  (*Id.*, ¶ 125.)

8                                       **III.    JUDICIAL NOTICE**

9              Defendant requests this Court take judicial notice of the Walmart and Target websites for

10  the Qunol Minerals Extra Strength Magnesium 420mg 120-capsule product and the NatureMade

11  Extra Strength Magnesium 400mg 60-softgel product.  (Doc. 20-1 at 2.)  In ruling upon a motion

12  to dismiss, the Court may consider matters which may be judicially noticed pursuant to Federal

13  Rule of Evidence 201.  *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988).

14  Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable

15  dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the

16  trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

17  cannot reasonably be questioned." Fed. R. Evid. 201(b).  "Even if a document is not attached to

18  the complaint, it may be incorporated by reference into a complaint if the plaintiff refers

19  extensively to the document or the document forms the basis of the plaintiff's claim." *United

20  States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Kneivel v. ESPN*, 393 F.3d 1068,

21  1076 (9th Cir. 2005).  "The defendant may offer such a document, and the district court may treat

22  such a document as part of the complaint, and thus may assume that its contents are true for

23  purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.  In the context of

24  a motion to dismiss claims based upon allegedly misleading product labels, the Court may take

25  _____

26  [1] Plaintiff's complaint identifies eleven products under the brand name Qunol: Extra Strength Magnesium 420mg,
    Magnesium Gummies 200mg, Extra Strength Turmeric Curcumin Complex 1000mg, Turmeric 2250mg, Turmeric +

27  Ginger 2400mg, Turmeric Gummies 500mg, Turmeric 500mg + Ginger 50mg Gummies, Turmeric + Ginger
    Gummies 550mg, Turmeric + Ginger Chews 750mg, CoQ10 Gummies 100mg, and Ultra Omega-3 Fish Oil 1000mg.

28  (Doc. 1, ¶ 1.)  Because Plaintiff alleges that the claims permeate all products, (*Id.*, ¶¶ 36–37), the Court will discuss
    the products generally, though the analysis will apply to all eleven products.

1    judicial notice of the images depicting the product labels at issue, *Von Koenig v. Snapple*

2    *Beverage Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010), without having to convert the

3    motion to dismiss into a motion for summary judgment.  *See Knievel*, 303 F.3d at 1076.

4         Plaintiff's complaint alleges several causes of action that are premised on the labels

5    affixed to Defendant's products comparative to the labels affixed to NatureMade's products, and

6    the price differentials between the two.  (*See generally* Doc. 1.)  Because Plaintiff incorporated by

7    reference Defendant's label and price and NatureMade's label and price in his complaint, *see*

8    *Knievel*, 393 F.3d at 1076, the Court will take judicial notice of the Target and Walmart websites

9    presenting this information underlying the alleged product misrepresentation claims, *see Von*

10   *Koenig*, 713 F. Supp. 2d at 1073.[2]  However, the Court's judicial notice "extends only to the

11   existence of these documents and not to their substance, which may contain disputed or irrelevant

12   facts."  *Givens v. Newsom*, 629 F. Supp. 3d 1020, 1024 (E.D. Cal. 2022).

13                               **IV.    LEGAL STANDARDS**

14   **A.    Rule 12(b)(1)**

15        "Federal courts are courts of limited jurisdiction, possessing 'only that power authorized

16   by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v.*

17   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  As such, "[i]t is to be presumed that a

18   cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests

19   upon the party asserting jurisdiction."  *Kokkenen*, 511 U.S. at 377.  Pursuant to Rule 12(b)(1) of

20   the Federal Rules of Civil Procedure, a party may challenge a claim for relief for lack of

21   subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  It is well-established that Article III

22   "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over

23   disputes in federal court."  *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir.

24   2022).  "[P]laintiffs must demonstrate standing for each claim that they press and for each form of

25   relief that they seek (for example, injunctive relief and damages)."  *TransUnion LLC v. Ramirez*,

26

27   [2]  Plaintiff does not object to Defendant's request for judicial notice.  (*See generally* Doc. 27.) Even still, the Court
     notes that Plaintiff alleges that he "purchased the Qunol Extra Strength Turmeric 1000 mg product at a Walmart store

28   located at 1110 East Prosperity Ave., Tulare, CA in or around January 2023" (Doc. 1 ¶¶ 11, 22) not that he purchased
     the item online.

1    594 U.S. 413, 430–31 (2021) (parenthetical in original).

2    **B.      Rule 12(b)(6)**

3            Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

4    the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

5    Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

6    complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss,

7    "all allegations of material fact are taken as true and construed in the light most favorable to the

8    non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

9    2020).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

10   accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

11           A claim is facially plausible "when the plaintiff pleads factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13   *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic

14   recitation of the elements of a cause of action will not do."  *Id.*; *see also Moss v. U.S. Secret Serv.*,

15   572 F.3d 962, 969 (9th Cir. 2009).  "Dismissal is proper only where there is no cognizable legal

16   theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro*,

17   250 F.3d at 732.

18           If the court dismisses the complaint, it "should grant leave to amend even if no request to

19   amend the pleading was made, unless it determines that the pleading could not possibly be cured

20   by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

21   this determination, the court should consider factors such as "the presence or absence of undue

22   delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

23   undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v.*

24   *Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

25                                  **V.      DISCUSSION**

26           Plaintiff alleges eight causes of action against Defendant: (1) violation of California's

27   Unfair Competition Law; (2) violation of California's False Advertising Law; (3) violation of

28   California's Consumers Legal Remedies Act; (4) breach of express warranties under California

4

1   Commercial Code § 2313(1); (5) breach of implied warranties under California Commercial Code

2   § 2314; (6) negligent misrepresentations; (7) intentional misrepresentation/fraud; and (8) quasi-

3   contract/unjust enrichment.  Defendant moves to dismiss each of these claims, along with

4   Plaintiff's pursuit of injunctive relief on standing grounds.  (*See* Doc. 20.)  The Court will address

5   each in turn.

6   **C.    Consumer Deception Claims**

7       Defendant moves to dismiss Plaintiff's first, second, and third claims, (*see generally* Doc.

8   20), on the grounds that "no reasonable consumer would be deceived because the front labels do

9   not provide any information at all about the number of doses or servings in the container, much

10   less promise that the number of capsules, gummies, or chews will *always equal* the number of

11   servings per container."  (*Id.* at 11 (emphasis in original)).  For claims arising under California's

12   CLRA, UCL, and FAL, the plaintiff must show that reasonable consumers are likely to be

13   deceived by the label.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The

14   reasonable consumer test requires the plaintiff to "show that members of the public are likely to

15   be deceived."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted).  This

16   standard also applies to common law fraud, intentional misrepresentation, and negligent

17   misrepresentation claims.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

18   (explaining that common law fraud requires showing that the label would mislead a reasonable

19   person); *Morn v. Am. Messaging Servs., LLC*, No. SACV 14-1635-DOC, 2014 WL 12660529, at

20   *2 (C.D. Cal. Nov. 18, 2014) (explaining that intentional misrepresentation requires the same

21   elements and standard as common law fraud); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316

22   Fed. App'x. 561, 562 (9th Cir. 2008) (holding that the "justifiable reliance" element of negligent

23   misrepresentation equates to the "reasonable consumer" standard).

24       "Whether a reasonable consumer would be deceived by a product label is generally a

25   question of fact not amenable to determination on a motion to dismiss."  *Girard*, 316 Fed. App'x

26   at 562.  However, the court may determine, as a matter of law, that the alleged violations of the

27   CLRA, UCL, and FAL are simply not plausible.  *See, e.g., Chong v. Nestle Water N. Am., Inc.*,

28   No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021) ("[T]his Court may conclude on

1  the pleadings that no reasonable consumer would be misled by any of the product labels at issue

2  in this suit."); *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *3

3  (N.D. Cal. July 2, 2010) (holding that a reasonable consumer would not be deceived into

4  believing that "Crunch Berries" cereal derived significant nutritional value from fruit).

5  "Dismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to

6  prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside v. Kimberly Clark Corp.*,

7  108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 938–39.)  The reasonable

8  consumer test therefore "requires more than a mere possibility that [the defendant's] label 'might

9  conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"

10  *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Proctor & Gamble Co.¸* 105 Cal. App. 4th 496, 508

11  (2003)).  "Rather, the reasonable consumer standard requires a probability that a significant

12  portion of the general consuming public or of targeted consumers, acting reasonably in the

13  circumstances, could be misled."  *Id.*

14         The Ninth Circuit has articulated an approach for evaluating packaging for consumer

15  deception claims at the pleadings stage.  *See Whiteside*, 108 F.4th at 778–81.  A court must begin

16  its analysis with the front label, as reasonable consumers are not expected to look beyond

17  unambiguous misleading representations on the front label to determine the truth from the rest of

18  the packaging, especially the ingredients list.  *Id.* at 778.  Thus, "if a product's front label is

19  plausibly misleading to reasonable consumers, then the court does not consider the back label at

20  the pleadings stage."  *Id.*  However, the front label must "convey[] a concrete and unambiguous

21  meaning to a reasonable consumer" to foreclose consideration of the back label.  *Id.* at 782; *see*

22  *also McGinty v. Proctor & Gamble Co.*, 96 F.4th 1093, 1098 (9th Cir. 2023) ("[T]he front label

23  must be *unambiguously deceptive* for a defendant to be precluded from insisting that the back

24  label be considered with the front label" at the pleadings stage (emphasis added)).  "[A] front

25  label is not ambiguous simply because it is susceptible to two possible meanings; a front label is

26  ambiguous when reasonable consumers would necessarily require more information before

27  reasonably concluding that the label is making a particular representation."  *Whiteside*, 108 F.4th

28  at 781 (quoting *McGinty*, 96 F.4th at 1097).  Only when the court determines the front label is

1   ambiguous may the Court look to the back label at the pleadings stage. *Id.* at 781.

2       Looking at the Extra Strength Turmeric 1000mg supplement purchased by Plaintiff, the

3   front label makes various representations: (1) "#1 Doctor Recommended form of turmeric

4   curcumin"; (2) "Extra Strength Turmeric Curcumin Complex"; (3) "Ultra High Absorption"; (4)

5   "1000mg"; (5) "Hydro Soluble Technology"; (6) "120 Vegetarian Capsules'" and (7) "Dietary

6   Supplement." (Doc. 1 at 7.) Plaintiff alleges that these representations "mislead[] reasonable

7   consumers into believing that each capsule, chew, or gummy unit contains the advertised dosage

8   of nutrients." (*Id.*, ¶ 16.) Defendant argues that Plaintiff's consumer deception claims should be

9   dismissed because Plaintiff "cannot plausibly show that a significant portion of consumers could

10  be misled by the Products' front labels." (Doc. 20 at 18.) In the alternative, if the front label is

11  ambiguous, Defendant argues that the Court should consider the back label, which "plainly

12  state[s] the serving size for the dosage amount and the number of servings," to dispel any alleged

13  misrepresentations. (*Id.* at 18–19.)

14      In *Walters v. Vitamin Shoppe Industries*, the Ninth Circuit held that a plaintiff "did not

15  have a duty to validate claims on the front of a product's label by cross-checking them against

16  information contained in small print on the back." 701 Fed. Appx. 667, 670 (9th Cir. 2017)

17  ("*Walters II*"); *see also Williams*, 552 F.3d at 939–40 ("We do not think that the FDA requires an

18  ingredient list so that manufacturers can mislead consumers and then rely on the ingredients list to

19  correct those misinterpretations and provide a shield for liability for the deception. Instead,

20  reasonable consumers expect that the ingredient list contains more detailed information about the

21  product that confirms other representations on the packaging."). The plaintiff in *Walters* alleged

22  that the products sold by the defendant had misleading labels because they displayed dosage

23  information per serving rather than per unit. *Walters v. Vitamin Shoppe Indus., Inc.*, No.

24  3:14-CV-00173-PK, 2015 WL 3916972, at *2 (D. Or. June 25, 2015) ("*Walters I*"). One of the

25  labels at issue was Calcium 1000mg Caramel Chews, which required individuals to consume a

26  two-chew serving to receive the full 1000mg of calcium shown on the product's front label. *Id.*

27  In *Walters I*, the court dismissed plaintiff's fraud claim because the back label included clarifying

28  information in small print. *Id.* at *8. The Ninth Circuit reversed, explaining that "[c]onsumers

1    review the small print on a product's label to learn additional details about a product, not to

2    correct potentially misleading representations found on the front." *Walters II*, 701 Fed. Appx. at

3    670 (citing *Williams*, 552 F.3d at 939–40). Thus, when the front label displays a dosage without

4    specifying if the dosage is per unit or per serving, the front label is unambiguous such that a

5    plaintiff need not turn to the back label for further information. *Id.*; *see also Cimoli v. Alacer

6    Corp.*, 546 F. Supp. 3d 897, 903 (N.D. Cal. 2021) (holding that when the representations on the

7    front label had a dosage representation regarding Vitamin C content without any indication as to

8    whether the dosage was per serving or per gummy, a reasonable consumer would be

9    unambiguously led to believe the dosage was per gummy); *Tarvin v. Olly Public Benefit Corp.*,

10   No. 2:24-cv-06261-WLH-PD 2024 WL 4866271, at *3 (C.D. Cal. 2024) (holding that the front

11   label was unambiguously deceptive when the label indicated that the supplement had a 5mg

12   dosage and the number of units per container, even though the back label clarified that a

13   consumer must ingest two units of gummies to obtain the 5mg advertised).

14        As in *Walters*, the representations on the front label of Defendant's products include a

15   specific dosage representation without any indication as to whether the dosage is per capsule or

16   per serving. (Doc. 1 at 7.) Defendant argues that "[t]here is nothing [on the front label] from

17   which to infer that there is a one-to-one correlation between the dosage amount and the number of

18   capsules, gummies or chews." (Doc. 20 at 20.) However, the absence of specific statements

19   correlating dosage to the unit number is synonymous with the product label in *Walters II*. In

20   *Walters II*, the Ninth Circuit relied solely on the front label to hold that a plaintiff did not have a

21   duty to validate if there was or was not a direct correlation between dosage and unit number. *See

22   Walters II*, 701 Fed. Appx. at 670. Similarly, in *Tarvin*, the court held that a reasonable consumer

23   would be misled by the front label "to believe that each unit contained the advertised dosage

24   amount" when the front label listed "the dosage amount along with the unit quantity without any

25   additional qualifications or information on servings." *Id.* at *3. Nearly identical to the label in

26   *Walters* and *Tarvin*, the front label here indicated a "1000mg" dosage and that the package

27   included "120 vegetarian capsules," with no additional qualifications or information on the

28   number of servings. *See Walters I*, 2015 WL 3916972, at *2; *Tarvin*, 2024 WL 4866271, at *3.

1  Thus, the Court finds that Plaintiff sufficiently pled that a reasonable consumer would be misled

2  by the front label.  Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiff's

3  consumer protection claims in counts one, two, and three.

4  **D.    Breach of Express and Implied Warranties Claims**

5  Under California law, to state a claim for breach of express warranty, the plaintiff must

6  show "(1) [the seller] made an affirmation of fact or promise or provided a description of its

7  goods; (2) the promise or description formed part of the basis of the bargain; (3) the express

8  warranty was breached; and (4) the breach caused injury to the plaintiff." *Corbett v. PharmaCare*

9  *U.S., Inc.*, 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021).  "To constitute a warranty and be

10  actionable, the statement must be specific and unequivocal." *Id.*  Furthermore, the plaintiff must

11  allege reasonable reliance on the breach of that warranty.  *Blennisv. Hewlett-Packard Co.*, No.

12  C 07-00333-JF, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008) (quoting *Williams v. Beechnut*

13  *Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).  "When an implied warranty of

14  merchantability cause of action is based solely on whether the product in dispute conforms to the

15  promises or affirmations of fact on the packaging of the product, the implied warranty of

16  merchantability claim rises and falls with express warranty claims brought for the same product."

17  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) (citing *Hendricks v.*

18  *StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)).

19  Defendant argues that Plaintiff fails to plead an affirmation of fact or promise.  (Doc. 20 at

20  29–30.)  Defendant contends that Plaintiff's broad allegation that the dosage information is

21  misleading is not "specific and unequivocal" to constitute an express warranty that each capsule

22  contained the dosage amount.  (*Id.* at 30.)  Though the Court has found that the dosage

23  representations on the front label could mislead a reasonable consumer, the Court agrees that the

24  representation does not rise to the level of an express "affirmation of fact or promise" that the

25  dosage amount is per unit.  *See, e.g.*, *Nacarino v. KSF Acquisition Corp.*, 642 F. Supp. 3d 1074,

26  1086 (N.D. Cal. 2022) (holding that even though the plaintiff sufficiently plead a

27  misrepresentation for the consumer protection claims, the "20g protein" representation did not

28  "constitute an express statement that the amount of protein is per serving/scoop alone"); *Cimoli*,

546 F. Supp. 3d at 900, 905 (holding no breach of express warranty where label of Vitamin C gummies, which stated "750mg Vitamin C . . . [did] not amount to an unequivocal statement or promise that the dosage [was] per gummy" and was "otherwise truthful").  Thus, the Court finds that Plaintiff has failed to state an express warranty claim for which relief can be granted.  Because the express and implied warranty claims are predicated on the same "affirmation of fact or promise," (*see* Doc. 1, ¶¶ 88–101), the implied warranty claim likewise fails.  *See Cimoli*, 546 F. Supp. 3d at 905; *see also Nacarino*, 642 F. Supp. 3d at 1086.  Accordingly, Defendant's motion to dismiss Plaintiff's breach of express and implied warranty claims are **GRANTED** with leave to amend.

**E.      Negligent and Intentional Misrepresentation Claims**

Plaintiff also brings common law fraud claims of intentional and negligent misrepresentation.  *See Biggs v. Bank of Am. Corp.*, No. EDCV 15-00267-VAP, 2017 WL11648863, at *3 (C.D. Cal. July 28, 2017) (explaining that intentional and negligent misrepresentation claims are equivalent to common law fraud claims).  (Doc. 1, ¶¶ 102–19.) Under California law, to state a claim for intentional misrepresentation, a plaintiff must establish "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 999 (2004). Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173–74 (2003).  Instead, the plaintiff must establish that the defendant made the misrepresentation without "reasonable grounds for believing it to be true."  *Id.* at 174.

Claims under consumer protection statutes and common law fraud claims are "substantively distinct" such that, for a statutory claim, "a plaintiff need merely allege that 'members of the public are likely to be deceived,'" while "a common law fraud deception must be actually false."  *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *see also Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998) ("[T]he concept encompassed in the phrase 'likely to be

1  deceived' has no relationship to the concept of common law fraud, which is also sometimes

2  referred to as deception.").  Thus, a "perfectly true statement couched in such a manner that is

3  likely to mislead or deceive the consumer, such as by failure to disclose other relevant

4  information" may be actionable under consumer protection statutes, but not common law fraud.

5  *Day*, 63 Cal. App. 4th at 333–34.

6       Defendant argues that Plaintiff's intentional and negligent misrepresentation claims fail

7  for three reasons: (1) because there is no misrepresentation, (2) because Plaintiff fails to plead

8  knowledge of falsity, and (3) because Plaintiff fails to establish intent to defraud.  (Doc. 20 at 28.)

9  Because the Court has already held that Plaintiff has sufficiently plead a misrepresentation under

10  the reasonable consumer standard, the Court now focuses on the other elements of intentional and

11  negligent misrepresentation.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

12  (explaining that common law fraud requires showing that the label would mislead a reasonable

13  person); *Morn v. Am. Messaging Servs., LLC*, No. SACV 14-1635-DOC, 2014 WL 12660529, at

14  *2 (C.D. Cal. Nov. 18, 2014) (explaining that intentional misrepresentation requires the same

15  elements and standard as common law fraud); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316

16  Fed App'x. 561, 562 (9th Cir. 2008) (holding that the representation element of a negligent

17  misrepresentation claim equates to the "reasonable consumer" standard).

18       The essence of Plaintiff's intentional and negligent misrepresentation claims is the same

19  as that of his claims under California's consumer protection laws—that Defendant made false and

20  misleading representations, by way of the dosage information not equating to the number of

21  capsules in the package.  (Doc. 1, ¶¶ 102–19.)  Defendant contends that Plaintiff did not allege

22  scienter, because Plaintiff made conclusory statements "that some unidentified person at Quten

23  possessed unspecified 'actual knowledge of their falsity' at some unidentified time based upon

24  unstated facts."  (Doc. 20 at 28.)  But even under Federal Rules of Civil Procedure 9(b)'s

25  heightened pleading standard for fraud claims, "intent, knowledge, and other conditions of a

26  person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Plaintiff's complaint satisfies this

27  requirement.  Plaintiff alleges that "Defendant is responsible for the making, labelling,

28  distribution, selling, and marketing" of the products, and accordingly, "Defendant possessed the

1    skills and expertise to know the type of information that would influence a consumer's

2    purchasing decision." *See Scott v. Saraya USA, Inc.*, 675 F. Supp. 3d 1040, 1048 (N.D. Cal.

3    2023) (holding that a pleading that the defendant was responsible for "development, labeling,

4    manufacturing, advertising, distribution, and sale of the products" was sufficient to plead the

5    scienter requirement). (Doc. 1, ¶¶ 10, 103, 110.)

6         Defendant additionally argues that Plaintiff made mere conclusory allegations without

7    specifying who "had an intent to defraud, when, or what that intent supposedly was." (Doc. 20 at

8    28.) However, the complaint adequately alleges intent to defraud. Plaintiff plead that each

9    capsule "contains only a fraction of the advertised dosage" and that "Defendant knew that

10   consumers would pay more for a product if they believed they were receiving a higher dosage

11   than that of competitors' lawfully labeled products." *See DiGiacinto v. RB Health (US) LLC*, 668

12   F. Supp. 3d 950, 968 (N.D. Cal. 2023) (holding that a pleading that the defendant "intended to

13   induce consumers to purchase the product at a premium price" was sufficient to allege an intent to

14   defraud). (Doc. 1, ¶¶ 2–3, 112–13.) Therefore, Defendant's motion to dismiss Plaintiff's

15   intentional and negligent misrepresentation claims is **DENIED**.

16   **F.    Quasi-Contract/Unjust Enrichment Claim**

17        Defendant argues that Plaintiff's quasi-contract/unjust enrichment claim is subject to

18   dismissal, because Plaintiff did not establish that he lacks an adequate remedy at law. (Doc. 20 at

19   30–31.)[3] The court "may construe an unjust enrichment claim 'as a quasi-contract claim seeking

20   restitution.'" *Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG, 2017 WL 3534991, at *8 (C.D.

21   Cal. Aug. 9, 2017) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221,

22   231 (2014)). "This doctrine applies where plaintiffs, while having no enforceable contract,

23   nonetheless have conferred a benefit on defendant which defendant has knowingly accepted

24   under circumstances that make it inequitable for the defendant to retain the benefit without paying

25   for its value." *Id.* However, "[i]t is a basic doctrine of equity jurisprudence that courts of equity

26   should not act . . . when the moving party has an adequate remedy at law." *Mort v. United States*,

27

28   _____

[3] Defendant additionally argues that this claim is subject to dismissal because the other claims based on the reasonable consumer standard must be dismissed. (Docs. 20 at 31; 30 at 12.) This argument is foreclosed by the Court's finding that a reasonable consumer could be misled by Defendant's dosage representation.

12

86 F.3d 890, 892 (9th Cir. 1996). Plaintiff fails to make such a showing; the complaint does not allege that Plaintiff lacks an adequate legal remedy. *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law"); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that a plaintiff must allege that they lack an adequate remedy at law to be subject to equitable restitution for harm under consumer protection claims). Therefore, Defendant's motion to dismiss Plaintiff's quasi-contract/unjust enrichment claim is **GRANTED** with leave to amend.

## G.    Standing to Pursue Injunctive Relief

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because Plaintiff "fails to plausibly allege any risk of future harm." (Doc. 20 at 32–33.) Defendant contends that Plaintiff "is now fully aware" that the dosage amount is not per capsule, and therefore can "evaluate product claims and make appropriate purchasing decisions going forward," such that injunctive relief should be dismissed. (*Id.*) Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Id.* at 560–61. A plaintiff bears the burden of demonstrating that the injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In other words, the "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013).  Past wrongs are insufficient by themselves to grant standing, but rather, are "evidence bearing on whether there is a real and immediate threat of repeated injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  When standing is premised entirely on the threat of repeated injury, the plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way."  *Id.* at 111.  In determining whether an injury is similar, the court "must be careful not to employ too narrow or technical an approach.  Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry."  *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

Before 2018, there was a district wide split as "to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief."  *Davidson*, 889 F.3d at 967.  In resolving this split, the Ninth Circuit held "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Id.* at 969 (quoting *Summers*, 555 U.S. at 493).  "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future."  *Id.*  For example, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  *Id.* at 970.  On the other hand, "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.*  Therefore, the Ninth Circuit noted that "we are 'not persuaded that injunctive is *never* available for a consumer who learns after purchasing a product that the label is false.'"  *Id.* (quoting *Duran v. Creek*, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016) (emphasis in original).

14

1    Plaintiff alleges that he "would like to, and would consider, purchasing the Products again

2    when he can do so with the assurance that the Products' labels are truthful and consistent with the

3    Products' actual ingredients." (Doc. 1, ¶ 31.)  Defendant contends that this allegation is

4    "insufficient to establish any actual or imminent harm."  (Doc. 20 at 33.)  Defendant cites two

5    cases to argue that an allegation that plaintiff "may purchase" products in the future do not

6    establish standing for injunctive relief.  (*Id.*)  However, those cases are distinguishable from

7    Plaintiff's allegations.  In *Scheibe v. Livwell Products, LLC*, No. 23-cv-216-MMA, 2023 WL

8    4414580, at *9 (S.D. Cal. July 7, 2023), the court held that the plaintiff's future harm was

9    "conjectural or hypothetical," not "actual and imminent," when the plaintiff alleged that he "may

10   wish to rely on Defendant's label representations and purchase the Products in the future, but

11   cannot currently do so."  *Id.*  Similarly, in *Tabler v. Panera LLC*, No. 19-cv-01646-LHK, 2019

12   WL 5579529, at *8 (N.D. Cal. Oct. 29, 2019), the plaintiff only alleged that he "may purchase the

13   Products in the future."  *Id.*  In both cases cited by the Defendant, the plaintiffs alleged that they

14   "may" purchase the product in the future, but did not indicate any *desire* to do so.  However, as

15   the Ninth Circuit noted in *Davidson*, if the plaintiff indicates a future desire to purchase the

16   products if the representations were true, such an allegation is sufficient to establish an "actual

17   and imminent harm."  *See Davidson*, 889 F.3d at 970–71 (explaining that the plaintiff's pleading

18   that she "desire[s] to purchase" defendant's product but has "no way of determining whether the

19   representation . . . is in fact true" is sufficient to satisfy the "imminent or actual threat of future

20   harm" requirement).

21   Though the distinction is slight, the Court recognizes a plaintiff's pleading that they

22   "may" purchase a product in the future does not concretely indicate a desire to actually do so.

23   However, by pleading that the Plaintiff "would like to" purchase Defendant's product in the

24   future, the Plaintiff indicates a desire to do so, even when paired with qualifying language

25   regarding assurances of the product's representations.  (Doc. 1, ¶ 31.)  Because the Court must

26   presume the truth of Plaintiff's allegations and construe the allegations in his favor, Plaintiff has

27   plead actual and imminent future harm.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

28   (9th Cir. 2010) (at the motion to dismiss stage of the proceedings, the court must "accept as true

1   all well-pleaded allegations of material fact, and construe them in the light most favorable to the

2   non-moving party").  Accordingly, Defendant's motion to dismiss Plaintiff's pursuit of injunctive

3   relief is **DENIED**.

4                                     **CONCLUSION**

5       For the reasons set forth above:

6       1.  Defendant's request for judicial notice is **GRANTED**.

7       2.  Defendant's motion to dismiss Plaintiff's first, second, third, sixth, and seventh claim

8           is **DENIED**.

9       3.  Defendant's motion to dismiss Plaintiff's fourth, fifth, and eighth claim is **GRANTED**

10          with leave to amend.

11      4.  Defendant's motion to dismiss Plaintiff's pursuit of injunctive relief on standing

12          grounds is **DENIED**.

13

14  IT IS SO ORDERED.

15      Dated:   __**March 28, 2025**__                          _Jennifer L. Thurston_
                                                        UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28